Filed 12/6/21  Browne v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| JOSHUA EUGENE BROWNE, | C093658 |
| Petitioner, | (Super. Ct. No. CR175535) |
| v. | |
| THE SUPERIOR COURT OF YOLO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

Petitioner Joshua Eugene Browne is the defendant in a criminal case.  The respondent court summarily revoked petitioner's probation based on an alleged violation of probation occurring in May 2020, over two years into petitioner's three-year term of probation.  Petitioner seeks a writ of mandate or prohibition restraining the respondent court from holding a formal revocation hearing on the ground that Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950) retroactively modified his probation term to end before the alleged violative conduct occurred, eliminating the respondent court's jurisdiction to formally revoke his probation.  We deny the petition.

1

FACTS AND HISTORY OF THE PROCEEDINGS

Petitioner is the defendant in a criminal action (Super. Ct. Yolo County, No. CR17-5535). He pleaded no contest to violations of Penal Code sections 459, 530.5, subdivision (a), and 368, subdivision (e). (Unspecified statutory section citations that follow are to the Penal Code.)

On February 5, 2018, the respondent court sentenced petitioner to three years of formal probation. On May 14, 2020, a petition was filed to revoke petitioner's probation, alleging that on May 12, 2020, petitioner violated section 273.5, subdivision (a). That same day the respondent court summarily revoked petitioner's probation. On November 18, 2020, an addendum to the petition was filed alleging on August 18, 2020, petitioner again violated probation by violating sections 242 and 594, subdivision (a)(1), both misdemeanors.

On January 27, 2021, petitioner filed a motion to dismiss the trial court's order revoking probation. Petitioner argued that Assembly Bill 1950 retroactively modified his probation to a term of two years so that it terminated on February 5, 2020. This date was before any petition for violation of probation was filed, so, according to petitioner, the respondent court lacked jurisdiction to summarily revoke petitioner's probation in May 2020. After the People filed a response, the respondent court denied petitioner's motion and calendared a formal probation violation hearing.

On March 3, 2021, petitioner filed this petition for writ of mandate or prohibition. On March 12, 2021, we issued an order staying the probation proceedings against petitioner and on April 27, 2021, we issued an order to show cause.

DISCUSSION

Petitioner contends Assembly Bill 1950 retroactively ended his probation on February 5, 2020, before any alleged violation of probation, so the respondent court no longer has jurisdiction to revoke probation. The People argue petitioner's probation was

2

summarily revoked months before Assembly Bill 1950's effective date, so probation was tolled and the court maintained jurisdiction to rule on the violation.

We conclude trial courts maintain jurisdiction to formally revoke probation if a defendant's violative conduct occurred during a period of active probation and supervision was summarily revoked before Assembly Bill 1950's effective date.

## I

### *Legal Standards*

#### A.    *Assembly Bill 1950*

Effective January 1, 2021, Assembly Bill 1950 amended section 1203.1, subdivision (a) to limit the probation term for felony offenses to two years, except in circumstances not present here.  (Assem. Bill 1950; Stats. 2020, ch. 328, § 2; *People v. Lord* (2021) 64 Cal.App.5th 241, 245 (*Lord*).)

Generally, "where [an] amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed," so long as the amended statute takes effect before the judgment of conviction is final.  (*In re Estrada* (1965) 63 Cal.2d 740, 748.)  "This rule rests on an inference that when the Legislature has reduced the punishment for an offense, it has determined the 'former penalty was too severe' [citation] and therefore 'must have intended that the new statute imposing the new lighter penalty . . . should apply to every case to which it constitutionally could apply' [citation]."  (*People v. DeHoyos* (2018) 4 Cal.5th 594, 600.)

Appellate courts, including this one, have unanimously found Assembly Bill 1950 retroactively applies to probationers whose cases are not yet final.  (*Lord, supra*, 64 Cal.App.5th at p. 246; *People v. Sims* (2021) 59 Cal.App.5th 943, 955-964 (*Sims*); *People v. Quinn* (2021) 59 Cal.App.5th 874, 879-885; *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1073-1074; *People v. Burton* (2020) 58 Cal.App.5th Supp. 1, 14-

19.)  This is because Assembly Bill 1950 is an ameliorative change that decreases punishment:  "With certain exceptions, the new law limits the term of probation for a felony conviction to two years.  While probation is not considered punishment in the same way incarceration is, it is clear probation is ' a "form of punishment." ' "  (*Lord,* at p. 245.)

There is no saving clause in Assembly Bill 1950 "or other indication it should be applied prospectively only."  (*Lord, supra*, 64 Cal.App.5th at p. 245.)  "On the contrary, the legislative history for Assembly Bill No. 1950 suggests the Legislature harbored strong concerns that probationers—including probationers whose cases are pending on appeal—face unwarranted risks of incarceration due to the lengths of their probation terms."  (*Sims, supra*, 59 Cal.App.5th 943 at p. 961.)  Committee reports on the bill noted about 20 percent of California prison admissions are the "result of supervised probation violations," and a " 'shorter term of probation, allowing for an increased emphasis on services, should lead to improved outcomes for both people on misdemeanor and felony probation while reducing the number of people on probation returning to incarceration.' "  (*Sims,* at p. 962.)  This "legislative history demonstrates that the amendment was motivated by concerns that apply to current probationers as much as future ones" and addresses probation being " 'a pipeline for re-entry into the carceral system.' "  (*People v. Stewart, supra*, 62 Cal.App.5th at p. 1073.)

### B.      Tolling Probation

The People do not contest Assembly Bill 1950's retroactivity.  Instead, they argue it is inapplicable because petitioner's probation had been tolled under section 1203.2.  This section provides that if there is "probable cause to believe that the supervised person is violating any term or condition of the person's supervision," they may be rearrested and "the court may revoke and terminate the supervision of the person if the interests of justice so require . . . ."  (§ 1203.2, subd. (a).)  Revocation under this provision,

4

"summary or otherwise, shall serve to toll the running of the period of supervision." (*Ibid.*)

Our Supreme Court analyzed the nature of the tolling provision in *People v. Leiva* (2013) 56 Cal.4th 498 (*Leiva*). It first found "toll" had a latent ambiguity. (*Id*. at p. 510.) "Toll" typically means " ' "to stop the running of; to abate." ' " (*Id*. at p. 507.) But applying that meaning to section 1203.2 would have "absurd consequences" because it would abate defendants' responsibility to comply with probation conditions until courts made a final determination on revocation. (*Id*. at p. 508) "Toll" also could not mean "extend," as the People posited, because it would impermissibly "allow[] a trial court, through summary revocation, to extend indefinitely the conditions and terms of probation until a formal revocation proceeding can be held." (*Id*. at pp. 508-510.)

Due to this ambiguity, the court analyzed the history of section 1203.2. It found the Legislature intended the tolling provision "to preserve the trial court's authority to hold a formal probation violation hearing at a time after probation would have expired with regard to a violation that was alleged to have occurred during the probationary period." (*Leiva, supra*, 56 Cal.4th at pp. 514-515.) The court explained formal proceedings are not " 'to revoke probation, as the revocation has occurred as a matter of law; rather, the purpose is to give the defendant an opportunity to require the prosecution *to prove the alleged violation occurred and justifies revocation*.' . . . Accordingly, a trial court can find a violation of probation and then reinstate and extend the terms of probation 'if, and only if, probation is reinstated based upon a violation that occurred during the unextended period of probation.' [Citation.]" (*Id*. at pp. 515-516.)

II

*Analysis*

Respondent court had jurisdiction to summarily revoke petitioner's probation on May 14, 2020. At that point, petitioner's probation had not expired and there was an

5

allegation that he had violated probation during the period of supervision. This validly tolled petitioner's probation as of that date under section 1203.2. While petitioner's probation was tolled, the respondent court retained jurisdiction to determine whether there had been a violation during probation, even if this determination occurred *after* the probationary term.

Assembly Bill 1950 did not eliminate the respondent court's jurisdiction to formally revoke defendant's probation. Due to the bill's retroactivity, as of January 1, 2021, petitioner could seek reduction of the term of his probation. However, this does not change the fact petitioner was still on probation on May 12, 2020, when he allegedly violated probation, and on May 14, 2020, when the trial court summarily revoked his probation. Even if his probation is retroactively shortened, there is nothing in Assembly Bill 1950 that would retroactively render his alleged violation not to have occurred *during probation*. Thus, under *Leiva*, the respondent court may still consider after the term of petitioner's probation " 'whether there has been a violation during the period of probation and, if so, whether to reinstate or terminate probation.' " (*Leiva, supra*, 56 Cal.4th at pp. 515-516.)

This result is consistent with the purpose of Assembly Bill 1950. The legislative history establishes the ameliorative change was to limit the *risk* a probationer will be found in violation by shortening the permissible length of probation, to two years in the case of felonies. (*Sims, supra*, 59 Cal.App.5th at p. 961 [summarizing legislative history as addressing "strong concerns" that probationers "face unwarranted risks of incarceration due to the lengths of their probation terms"].) The Legislature did this by modifying section 1203.1, the provision detailing the permissible length of probation. But this change does not allow probationers to avoid *actual* violations of probation occurring during the term of their probation. Assembly Bill 1950 did not modify sections 1203.2 or 1203.3, the provisions dealing with revocation of probation. Applying Assembly Bill 1950 here would do more than just reduce the permissible length of

6

probation and the theoretical risk of violations, as the Legislature intended; it could permit the defendants to avoid punishment for actual conduct that violated terms of probation *during the period of supervision*.

Absolution for probation violations would undermine the purpose of probation. "The primary goal of probation is to ensure '[t]he safety of the public . . . through the enforcement of court-ordered conditions of probation.' " (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120; § 1202.7.) The legislative history of Assembly Bill 1950 confirms the Legislature recognized the continued importance of enforcing probation conditions. (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.) as amended May 6, 2020, p. 6 ["To the extent that a probationer is not complying with the treatment or counseling directed by the court during a probationary period, the court can revoke the defendant's probation until the defendant is back in compliance"]; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.) June 10, 2020, p. 7 [quoting a statement from a supporter of the bill as saying "this bill does not take the 'teeth' out of probation or the courts"].)

The respondent court ordered probation for petitioner for his violation of sections 459, 530.5, subdivision (a), and 368, subdivision (e). Knowing the potential consequences of violating probation, petitioner allegedly violated section 273.5, subdivision (a) during probation. The increased culpability for committing illicit acts while on probation, when the state is supervising the defendant's ability to safely remain in society, justifies the additional criminal liability associated with probation violations, independent of the potential for separate criminal charges. Petitioner's position would require us to supplant the respondent court's role in overseeing adherence to probation conditions and not only retroactively shorten petitioner's probation but potentially absolve him of the criminal liability associated with violating probation. Instead of reducing punishment for past conduct, petitioner would avoid punishment for additional criminal conduct.

Lastly, petitioner contends it would be arbitrary to apply Assembly Bill 1950 to those defendants whose probation was revoked after January 1, 2021, and not those who had it revoked prior. That misstates the bill's application. The bill would apply equally to both sets of the defendants to allow anyone whose case is not yet final to reduce the term of their probation. But, if a defendant's probation had been previously revoked, a trial court may still formally revoke probation if it finds the defendant had violated probation during probation (and before retroactive relief was sought under Assembly Bill 1950). In this way, probation could only be extended beyond Assembly Bill 1950's limits in cases where a defendant had been found to violate probation while on probation. What matters is not the bill's effective date but a defendant's conduct while on probation. As discussed above, the additional culpability derives from the defendant knowingly violating probation during a lawful period of supervision; this is not arbitrary or unjustified.

## DISPOSITION

The petition for a writ of mandate or prohibition is denied. The stay issued by this court on March 12, 2021, is vacated upon finality of this opinion.

 

 

HULL, J.

We concur:

 

BLEASE, Acting P. J.

 

KRAUSE, J

8