Filed 9/10/25  P. v. Duniphan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LISA DUNIPHAN,<br><br>    Defendant and Appellant. | D084733<br><br><br><br>(Super. Ct. No. SCE415892) |

APPEAL from a judgment of the Superior Court of San Diego County, Herbert J. Exarhos, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Lisa Duniphan of five felony counts of cruelty to animals (Pen. Code, § 597, subd. (a)).

Duniphan appeals, alleging the trial court erroneously admitted evidence of her conduct leading up to a prior animal cruelty conviction. We disagree. The evidence is probative because it shows she intentionally engaged in illegal conduct, and that probative value is not substantially outweighed by undue prejudice. The court appropriately minimized any potential prejudice by giving a limiting instruction and sanitizing the evidence. It therefore did not abuse its discretion in admitting the evidence.

Duniphan also challenges her prison sentence of four years and eight months. Duniphan first argues the trial court abused its discretion by relying on a supplemental report and unsupported allegations from the day of the sentencing hearing. To the extent this claim is not forfeited, we conclude the court did not err in relying on this competent evidence. Second, Duniphan contends the court abused its discretion by imposing a middle-term sentence. Given Duniphan's failure to establish eligibility for the presumptive lower term and the fact that any mitigating factors were substantially outweighed by appropriately considered aggravating ones, however, the trial court did not err. Finally, Duniphan claims the trial court abused its discretion by imposing consecutive terms. But she forfeited any error in this regard by failing to raise the issue in the trial court.

Accordingly, we affirm.

## I.

## A.

Duniphan has a history of animal cruelty. In 2009, she was convicted of six counts of misdemeanor animal cruelty after 21 dogs were found tied up in her home with matted fur and urine scalds on their feet. Her sentence included a term of probation.

In 2011, Duniphan violated probation by possessing 40 dogs on her property without food, water, shelter, or medical attention. The dogs were found living in their own feces. Duniphan subsequently pled guilty to another misdemeanor animal cruelty charge.

## B.

In 2022, upon responding to a fire on Duniphan's property, first responders rescued, among other animals, 38 dogs, five cats, four goats, one horse, one bull, one llama, and 23 mixed fowl.

Some animals were found in small cages—many tied up—and covered in feces. When officers arrived, dogs were burning in cages, and some had died. All 38 dogs rescued were starved, had matted fur, and, if caged, had feces all over their cages. Most of the animals found on the property were severely underweight. One rescued dog had to be euthanized on the spot due to its poor health.

Duniphan was charged with five felony counts of animal cruelty under Penal Code section 597(a). While on pretrial release, Duniphan was ordered to not possess any animals.

## C.

At trial, the testimony relating the above facts was corroborated with photographs of the animals rescued and the conditions in which they were found. Over Duniphan's objection, the jury also heard testimony regarding the conduct leading to her 2009 conviction; but the jury was instructed on the limited use of that evidence.

A defense expert testified Duniphan "likely had [a] hoarding disorder" but that it did not affect her ability to recognize that animals need proper care.

3

In her testimony, Duniphan—a high school teacher for over 40 years—claimed ownership of only certain animals, denied tethering her animals or keeping them in crates or cages, denied her animals were unhealthy or underweight, and insisted migrant workers left the other animals on her property.

A jury found Duniphan guilty of all charged counts.

D.

In preparation for sentencing, probation submitted a report dated April 15, 2024, with an initial recommendation of 180 days of custody with two years of formal probation. Should a prison sentence be deemed appropriate, probation recommended a middle-term consecutive sentence of four years and eight months. Probation identified no mitigating circumstances and four aggravating ones.

After probation submitted its initial recommendation, the prosecutor alerted the court, defense counsel, and a supervising probation officer at a June 5 hearing that Duniphan violated the terms of her pretrial release by possessing animals. Specifically, Duniphan possessed two adult dogs, eight puppies, three roosters, and two tortoises that local law enforcement rescued. Duniphan was remanded into the sheriff's custody without bail. Probation indicated it would prepare a supplemental report.

In its supplemental report dated June 28, probation recommended a sentence of four years of formal probation and 365 days of custody due to Duniphan's "blatant disregard for the Court's order." The report contained excerpts from a written document regarding Department of Animal Control Case A24-663895, an investigation into Duniphan's continuing mistreatment of animals in her possession.

4

At the June 28 sentencing hearing, the court learned from the prosecutor that the Department had informed her that one rescued dog referenced in the supplemental report had a prolapsed vagina and had to be euthanized. Another dog had a prolapsed rectum. The prosecutor was clear she "share[d this information] with defense counsel." Afterward, the probation officer stated she "d[id]n't think that [Duniphan]'s amenable to probation."

The trial court denied probation and sentenced Duniphan to a middle-term, consecutive sentence of four years and eight months in prison for all five counts.

## II.

## A.

Duniphan argues the trial court abused its discretion by admitting evidence concerning her 2009 animal cruelty conviction. We disagree.

We review evidentiary rulings for abuse of discretion. (*People v. Mataele* (2022) 13 Cal.5th 372, 413.) A court abuses its discretion when its decision is "arbitrary or capricious or exceeds the bounds of reason, all of the circumstances being considered." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 [cleaned up].)

While character or character trait evidence cannot be used to prove a person's conduct on a specified occasion, a person's prior misconduct is admissible to prove, among other things, (1) intent and (2) absence of mistake. (Evid. Code, § 1101.) Courts can exclude relevant evidence of a person's prior uncharged misconduct, however, if such evidence would create a substantial danger of undue prejudice. (§ 352.) Prejudice refers to "evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues."

5

(*People v. Mani* (2022) 74 Cal.App.5th 343, 372 [cleaned up].) Evidence that simply tends to prove guilt or is damaging to the defendant's case is not subject to exclusion on this basis. (*Ibid.*)

Here, evidence of the conduct leading to Duniphan's 2009 animal cruelty conviction was admissible to prove Duniphan's commission of the charged offenses was intentional rather than mistaken. In 2009, Duniphan was convicted of animal cruelty after law enforcement officers found "several animals . . . inside the residence sitting in and covered with urine and feces. Almost all were tied and tangled up, without water and food." In the current case, Duniphan's animals were found in even worse conditions. Both instances involved the same type of animal and similar forms of cruelty. When proving absence of mistake, the least degree of similarity between the charged and uncharged offense is required. (*People v. Phillips* (2022) 75 Cal.App.5th 643, 672.) Given the similarities in how Duniphan treated her animals after being made aware her conduct was criminal, Duniphan's prior misconduct shows intent and absence of mistake.

Contrary to Duniphan's claim, intent was a central issue. Defense counsel alleged Duniphan's hoarding disorder created an alternate reality that prevented her from acting intentionally. The prosecution, on the other hand, had to prove Duniphan intentionally engaged in illegal conduct. (Pen. Code, § 597(a); *People v. Alvarado* (2005) 125 Cal.App.4th 1179, 1189) [animal cruelty is a general intent crime].) That Duniphan's animals kept ending up in abusive environments tends to "establish (provisionally, at least, though not certainly) the presence of . . . criminal[ ] intent accompanying such an act." (*People v. Felix* (2019) 41 Cal.App.5th 177, 185-186 [cleaned up].) While Duniphan argues Evidence Code section 1101(b) applies to specific intent crimes only and not to general intent crimes, she fails to cite

any legal authority to support this claim and fails to meaningfully develop it. The point is thus forfeited. (*People v. Flores* (2024) 101 Cal.App.5th 438, 451, fn. 3.)

Duniphan further asserts the conduct leading up to her 2009 conviction is irrelevant to show absence of mistake because mistake was not a defense at trial. Yet relevancy does not require a fact to be an element of the offense. (*People v. Clark* (2021) 62 Cal.App.5th 939, 957-958.) A fact can be relevant when it leads to inferences relating to the elements of the offense, as here. (*Ibid.*) The facts underlying Duniphan's 2009 conviction are therefore probative.

Duniphan argues admitting 16-year-old conduct was highly inflammatory, so the evidence should have been excluded under section 352. We disagree. While the length of time between uncharged conduct and a new charge can be relevant, no "'specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible.'" (*People v. Johnson* (2010) 185 Cal.App.4th 520, 535.) Prior acts occurring more than 20 years earlier have been found to not be "'too remote.'" (*Ibid.*) Thus, the remoteness of Duniphan's prior conduct does not necessarily make it inadmissible under section 352. Ultimately, "'"[t]he principal factor affecting the probative value of an uncharged act is its similarity to the charged offense."'" (*Id.* at p. 531.) Here, as already explained, such similarity makes the evidence highly probative.

While Duniphan contends otherwise, the trial court was aware Duniphan's prior conduct was subject to section 352 balancing and expressly weighed the probative value against undue prejudice. The court conditioned the admissibility of this evidence on it being "sanitized" to admit only facts about her conduct and not the conviction. The trial court also did not allow

7

Duniphan's 2009 and 2011 convictions to be used for impeachment. The trial court appropriately balanced the evidence's significant probative value against the danger of undue prejudice and took appropriate measures to minimize potential prejudice.

In addition, the trial court instructed the jury that it could consider the prior misconduct only for "the limited purpose" of determining whether Duniphan "acted maliciously as alleged in this case" and not "for any other purpose." (See CALCRIM No. 375.) The court warned the jury this evidence "is not sufficient by itself to prove that [Duniphan] is guilty of cruelty to animals." We presume "limiting instructions are followed by the jury." (*People v. Waidla* (2000) 22 Cal.4th 690, 725.) Duniphan's claim the jury used this evidence to punish her for previous conduct fails to rebut this presumption.

We thus conclude the trial court did not abuse its discretion in admitting this evidence.

B.

Duniphan's second argument is not a model of clarity, but she appears to argue the trial court erred by (1) relying on facts and opinions as to which Duniphan had no notice before the day of the sentencing hearing, (2) sentencing her to the middle term, and (3) imposing consecutive prison terms.[1] We disagree.

We review errors in sentencing for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.)

---

[1] To the extent Duniphan's opening appellate brief appears to argue the trial court abused its discretion by denying probation, Duniphan's reply brief clarified she "never made such a claim."

1.

Duniphan claims the court abused its discretion in sentencing her to prison based in part on (1) a supplemental probation report filed the same day as the sentencing hearing and (2) allegations not supported by evidence. She argues the court "violated the principles set forth in *Ford* and *Apprendi*" by "holding appellant liable for violating a probation that was <u>never granted</u>, based on <u>no competent evidence</u>." This argument is unpersuasive.

If selecting between the middle and lower terms of imprisonment—as the court did here—courts can consider factors that aggravate or mitigate a defendant's circumstances regardless of whether they have been found true beyond a reasonable doubt or been stipulated to by the defendant. (Cal. Rules of Court, rule 4.420(d).) Such facts can appear in the probation report *or even be presented during the sentencing hearing*. (*Ibid*.)

Because the trial court did not sentence Duniphan to the upper term, the aggravating circumstances underlying the court's sentencing choice did not have to be proven beyond a reasonable doubt under *Apprendi v. New Jersey* (2000) 530 U.S. 466. (Cal. Rules of Court, rule 4.420(d); see also *People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 929.)

To the extent Duniphan claims her due process rights were violated due to inadequate notice of and an opportunity to rebut the allegations conveyed in the report or during the hearing, she cites no authority supporting her position and fails to sufficiently develop this contention. The argument is therefore forfeited. (*Flores*, 101 Cal.App.5th at p. 451, fn. 3.) At any rate, Duniphan was on notice two and one-half months before her sentencing that she had violated the conditions of her release by possessing animals. She was further on notice that probation had alternatively recommended a middle-term prison sentence. Duniphan accordingly had

9

sufficient notice of and opportunity to respond to the allegations as well as notice a prison sentence was being considered.

To the extent Duniphan challenges the competency of the non-trial evidence on which the court relied, her argument fares no better. As previously noted, under Rule of Court 4.420(d), so long as the court is not imposing the upper term, aggravating factors need not be proven true beyond a reasonable doubt. Here, the facts relating to Duniphan's failure to comply with the conditions of her release—not, as Duniphan contends, her hypothetical violation of potential probation terms—came from a Department of Animal Control investigation file and a conversation between the prosecutor and the Department concerning that investigation. The evidence was not unattributed hearsay or speculation. We accordingly conclude the court did not abuse its discretion in relying on it.

2.

The court also did not abuse its discretion in refusing to sentence Duniphan to the lower term.

When imposing a sentence of imprisonment, a court must impose a lower term only when specific, enumerated mitigating circumstances were a contributing factor in the commission of the offense and the court determines the aggravating circumstances do not outweigh the mitigating circumstances. (Cal. Rules of Court, rule 4.420(e); Pen. Code, § 1170(b)(6).)

Duniphan's purported hoarding disorder did not obligate the trial court to impose a low-term sentence. While Duniphan argues her disorder "likely contributed to her offense," her own expert's testimony established her possible disorder did not play a major role in the commission of the crime. The expert—a doctor—testified that Duniphan's "likely" hoarding disorder impacted her perception of reality, specifically her tendency to reject negative

10

feedback and view reality in a positive light. The doctor also testified, however, that hoarding disorders do not prevent individuals from recognizing that animals need food and water and should not stand in their own feces, issues directly related to the charges Duniphan faced. Without some evidence that her possible hoarding disorder contributed to Duniphan's starvation and neglect of her animals, Duniphan's argument is based on supposition alone, and the trial court was not obligated to impose a low-term sentence. (Pen. Code, § 1170(b)(6).)

3.

Finally, we conclude Duniphan forfeited her challenge to consecutive sentencing by failing to raise it below.

To avoid forfeiture, a party must raise certain issues at the time of sentencing. (*People v. Scott* (1994) 9 Cal.4th 331, 351.) This rule encourages the prompt detection and correction of error, reduces the number of unnecessary appellate claims, and ensures the fair and orderly administration of justice. (*Ibid.*)

Duniphan did not raise this issue before the trial court. At sentencing, Duniphan's counsel objected to the court's denial of probation and requested a restitution hearing but did not object to the trial court's imposition of consecutive terms despite having a meaningful opportunity to do so. The trial court was thus unable to remediate any alleged issues relating to consecutive sentencing; this claim is therefore forfeited.

In an attempt to avoid counsel's failure to raise the consecutive terms argument during the sentencing hearing, Duniphan contends this failure "must be considered ineffective assistance of counsel." The issue is forfeited both because it was first raised in a footnote in Duniphan's reply brief and because it is underdeveloped. (*Flores*, 101 Cal.App.5th at p. 451, fn. 3.)

11

\* \* \*

While we have considered all adequately developed arguments needed to resolve this appeal that Duniphan separately identified under an appropriate heading in her briefs, to the extent she has asserted additional arguments we have not addressed, we deem them forfeited.  (See *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 25; Cal. Rules of Court, rule 8.204(a)(1)(B).)

### III.

We affirm.

CASTILLO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.